# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**ERIC SHAWN GODFREY,**
Plaintiff,

v.

**EXPERIAN INFORMATION SOLUTIONS, INC.;**
**CONCORD SERVICING LLC, formerly known as**
**EQUIANT FINANCIAL SERVICES;**
**GTCR LLC;**
**CAPITAL VACATIONS LLC;**
**and CRG DEVELOPMENT LLC,**
Defendants.

## COMPLAINT AND DEMAND FOR JURY TRIAL

## I. PRELIMINARY STATEMENT

1. This is an action for willful and negligent violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), arising from Defendants' repeated failure to follow statutory requirements in connection with a provably false "Foreclosure proceedings started" notation that appeared on Plaintiff's Experian credit report for approximately ten months.

2. Horry County, South Carolina public records confirm that no foreclosure was ever filed against Plaintiff, no case number exists, and no court record of any kind exists relating to Plaintiff or this account. The reported event never occurred. Plaintiff alleges that the nature of the underlying account — a points-based right-to-use contractual license with no deeded real property interest — supports a plausible inference that no legal mechanism existed under which foreclosure proceedings could have commenced.

3. Despite receiving documentary proof of the notation's falsity, Defendant Experian Information Solutions, Inc. verified the false information as accurate across multiple dispute rounds spanning October 2025 through April 2026. Defendant Concord Servicing LLC changed the reported foreclosure start date twice during active dispute periods — from July 2025 to September 2025 to February 2026 — while simultaneously certifying the information as accurate to Experian.

4. Defendants Capital Vacations LLC and CRG Development LLC constitute the account ownership and financing structure from which the false reporting originated. Capital Vacations, as account owner and directing principal, caused the false information to be furnished to Experian through Concord. CRG Development LLC, as the note holder identified in the promissory note executed by Plaintiff, is the financing entity through which Capital Vacations structured the underlying transaction, and retains an independent legal interest in the account that could support future credit reporting through any successor servicer or assignee. Both entities share the same address and counsel and are named jointly to ensure that any relief entered by this Court binds all entities within the Capital Vacations / CRG financing structure. Defendant GTCR LLC acquired Concord Servicing LLC on or about July 31, 2023; every violation described herein occurred after that acquisition and

during GTCR's ownership; actual knowledge of the false reporting at the Chief Legal Officer level is alleged based on Jeffrey Wright's receipt of and engagement with Plaintiff's written correspondence; GTCR ratified Concord's continued false reporting by taking no corrective action despite having corporate authority to do so.

5.      On June 10, 2026, Sonja Yurkiw, General Counsel of Concord Servicing LLC, acknowledged in written correspondence that there was "a noted error in the reporting," that "the reporting logic" was "incorrect," and that Plaintiff's account "had been reported with incorrect information." These are Concord's General Counsel's own words, not Plaintiff's characterization. This correspondence was copied to Jeffrey Wright, Chief Legal Officer of GTCR LLC.

6.      Plaintiff suffered concrete, documented actual damages including three adverse credit actions — Home Equity Line of Credit denials by Bank of America in September 2024 and Discover Home Loans in October 2024, and a credit card denial by Allegiant in January 2026 — all of which specifically cited information in Plaintiff's Experian credit report. This account and its associated tradeline appeared only on Experian and never on TransUnion or Equifax in any form; both of those bureaus reflected scores in the vicinity of 800 throughout the relevant period.

## II. JURISDICTION AND VENUE

7.      This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

8.      Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred while Plaintiff resided in Lancaster, Pennsylvania, within this District, and because Plaintiff received the adverse credit actions at issue while residing in this District.

## III. PARTIES

9.      Plaintiff Eric Shawn Godfrey is a natural person residing at 1705 Wilson Ave, Lancaster, Pennsylvania 17603. Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c). Plaintiff is a disabled veteran receiving VA disability benefits at the Total Disability Individual Unemployability (TDIU) rate, with service-connected conditions affecting mental health.

10.     Defendant Experian Information Solutions, Inc. ("Experian") is a corporation doing business throughout the United States, with its principal place of business at 475 Anton Blvd, Costa Mesa, California 92626. Experian is a "consumer reporting agency" as defined by the FCRA, 15 U.S.C. § 1681a(f), and compiles and maintains files on consumers on a nationwide basis as defined by 15 U.S.C. § 1681a(p).

11.     Defendant Concord Servicing LLC ("Concord"), formerly known as Equiant Financial Services, is a limited liability company with its principal place of business at 4343 N. Scottsdale Road, Suite 270, Scottsdale, Arizona 85251. Concord is a "furnisher of information" as contemplated by the FCRA, 15 U.S.C. § 1681s-2. Throughout the relevant dispute period, Concord was reporting Plaintiff's account under Equiant Financial Services' vacated former address at 500 N. Juniper Drive, Suite 100, Chandler, Arizona 85226 rather than Concord's current address.

12.    Defendant GTCR LLC ("GTCR") is a private equity firm that acquired Concord Servicing LLC and its entire consumer loan portfolio on or about July 31, 2023, with its principal place of business at 300 N. LaSalle Street, Suite 5600, Chicago, Illinois 60654. All violations described herein occurred after GTCR's acquisition and during GTCR's ownership and control of Concord's operations. Jeffrey Wright, GTCR's Chief Legal Officer, received and opened Plaintiff's written correspondence and was copied on all material correspondence between Plaintiff and Concord's General Counsel. GTCR, with actual knowledge of the false reporting at the Chief Legal Officer level and with full corporate authority to direct Concord to correct or delete the false notation, ratified Concord's continued false reporting by failing to take corrective action throughout the violation period.

13.    Defendants Capital Vacations LLC ("Capital Vacations") and CRG Development LLC ("CRG") are related entities that share the same principal place of business at 2024 Corporate Centre Drive, Suite 101, Myrtle Beach, South Carolina 29577, and are represented by the same counsel, David Cope, General Counsel, who has received correspondence in this matter on behalf of both entities. Capital Vacations is the account owner and directed Concord's credit reporting activities with respect to Plaintiff's account. CRG is the financing entity identified as the original note holder in the promissory note executed by Plaintiff on or about February 15, 2020, and operated as the transaction and financing arm of the Capital Vacations enterprise through which the underlying account was originated. Capital Vacations and CRG are pleaded together throughout this Complaint because they constitute the account ownership and financing structure from which the false reporting originated and because both entities must be bound by any injunctive relief entered by this Court to prevent future reporting of this account — Capital Vacations as account owner and CRG as note holder on the underlying instrument, each of which independently retains a legal interest in the account that could support future credit reporting through a successor servicer or assignee. Gloria Torres, Compliance Manager for Concord Servicing LLC, confirmed in writing on April 27, 2026 that Concord is acting solely as servicer for Capital Vacations and that Capital Vacations was contacted and provided documents in connection with this account during the dispute period.

14.    Defendant CRG Development LLC ("CRG") is described together with Capital Vacations LLC in paragraph 13 above. Plaintiff alleges CRG furnished, directed, authorized, or caused furnishing as contemplated by 15 U.S.C. § 1681s-2 to the extent it originated the consumer installment loan and directed or authorized credit reporting in connection with the account. As the note holder on a points-based right-to-use contractual license carrying no real property interest, CRG was in a position to know from the inception of this account that reporting "Foreclosure proceedings started" on this instrument was not supportable under any applicable law.

## IV. FACTUAL ALLEGATIONS

### A. The Account

15.    On or about February 15, 2020, Plaintiff opened a points-based right-to-use vacation ownership membership account with Capital Vacations LLC. The account was financed through a consumer installment loan in the amount of $12,771.94 at 18.24% interest per annum, with a contractual monthly payment of $237.10, originated by CRG

Development LLC as note holder. Concord has consistently reported the monthly payment as $240.00 — a separate inaccuracy not corrected across any dispute round.

16.     The account is a points-based right-to-use membership — a contractual license, not a deeded real property interest. No deed of trust, mortgage, or real property interest of any kind secures this account. Plaintiff alleges that reporting "Foreclosure proceedings started" on a contractual license that carries no real property interest was not supportable under any applicable law and was factually false, as confirmed by Horry County public records.

17.     Plaintiff further alleges that Defendants' simultaneous reporting of "Foreclosure proceedings started" while continuing to treat the account as an accumulating collectible debt — with a reported balance that grew beyond the original principal throughout the reporting period — reflects an internally inconsistent reporting position. Defendants have never provided any explanation for how an account could simultaneously be in active foreclosure proceedings and continue to accrue an increasing collectible balance.

18.     Plaintiff made 19 payments on the account before ceasing payment in August 2021. This account has never appeared on Plaintiff's TransUnion or Equifax credit reports in any form. The Concord tradeline — carrying the delinquency and the false foreclosure notation — appeared only on Experian.

## B. The False Foreclosure Notation

19.     In or around July or August 2025, Plaintiff discovered upon reviewing his Experian credit report that Concord was reporting "Foreclosure proceedings started" with a reported start date of July 2025.

20.     Plaintiff conducted a search of Horry County, South Carolina public records — the county in which any foreclosure associated with this account would have been filed. Those records confirm that no foreclosure was ever filed against Plaintiff, no case number exists, and no court record of any kind exists relating to Plaintiff or this account. Plaintiff attached these public records to every dispute submission from Round 2 onward.

21.     A foreclosure proceeding either commenced or it did not. Horry County public records reflect no filing, no case number, and no proceeding of any kind. The reported notation therefore represents an event that, the public record reflects, never occurred — a fact objectively and readily verifiable by any person with access to those records.

22.     Plaintiff does not dispute that the underlying account reflects a payment obligation, that Plaintiff ceased making payments, or that the delinquency is otherwise accurately reported. Plaintiff disputes solely that a foreclosure proceeding commenced — a question answered entirely by Horry County public court records without reference to any contract term, legal standard, or subjective determination. No legal analysis, no contract interpretation, and no adjudication of any kind is required to determine whether a foreclosure was filed. The answer exists in a public court record that any person can access and verify within minutes. Defendants reported that a foreclosure commenced. Horry County public records confirm none did. That is the entirety of the factual dispute.

23.     Credit scoring models and underwriters treat different derogatory notations on a spectrum of severity. Foreclosure represents one of the most serious adverse credit events, categorically more damaging than delinquency alone. By reporting "Foreclosure

proceedings started" on this account, Concord artificially elevated Plaintiff's tradeline from delinquent status to foreclosure status, placing Plaintiff in the most adverse credit category and materially worsening the effect of the tradeline on Plaintiff's creditworthiness.

24.    Despite four rounds of certified mail disputes spanning approximately six months, Defendants have never identified any document, case number, foreclosure notice, statutory proceeding, judicial filing, or other record demonstrating that the reported "Foreclosure proceedings started" event actually occurred. Plaintiff does not allege that the absence of such a record is itself a violation; Plaintiff alleges that no such record exists because no such event occurred, as confirmed by Horry County public court records, and that Defendants have offered no contrary evidence across any dispute round.

## C. The e-OSCAR and ACDV Process

25.    When Experian receives a consumer dispute, it communicates with furnishers through the e-OSCAR platform via an Automated Credit Dispute Verification form ("ACDV"), which the furnisher returns with a certification of accuracy or a correction. Whether Experian forwarded Plaintiff's Horry County public records to Concord through this process across each dispute round is not known to Plaintiff and is among the information sought through Plaintiff's two unanswered Section 1681g complete file disclosure requests. The Consumer Financial Protection Bureau has filed suit against Experian — Case No. 8:25-cv-00024, C.D. Cal., filed January 7, 2025, currently set for jury trial September 21, 2026 — alleging that Experian systematically fails to forward consumer-submitted documentation to furnishers through the ACDV process and uncritically accepts furnisher certifications without independent verification. Plaintiff's documented experience is directly consistent with the conduct alleged in that proceeding.

## D. Plaintiff's Dispute History and Defendants' Violations

### Round 1 — October 2025:

26.    On October 20, 2025, Plaintiff sent certified mail disputes to both Experian and Concord disputing the false foreclosure notation and demanding validation of all reported information, documentation establishing Concord's authorization to report the underlying account, identification of who conducted any verification, and explanation of how that verification was conducted.

27.    Plaintiff's certified mail dispute to Experian was delivered on November 1, 2025, as confirmed by USPS tracking number 9414711105495856125990. Experian provided no response of any kind to this dispute. The 30-day statutory reinvestigation deadline under 15 U.S.C. § 1681i(a)(1) passed without any reinvestigation result, correction, deletion, or communication of any kind being provided to Plaintiff.

28.    15 U.S.C. § 1681i(a)(2)(A) separately required Experian, before the expiration of five business days from receipt of Plaintiff's dispute, to provide notification of the dispute to Concord as the furnisher of the disputed information, together with "all relevant information regarding the dispute" that Experian had received from Plaintiff. Whether Experian fulfilled this obligation — and specifically whether Experian forwarded Plaintiff's dispute documentation to Concord within the five-business-day period — is not

known to Plaintiff and is among the information sought through Plaintiff's two unanswered Section 1681g complete file disclosure requests. A failure to provide that notification within the five-business-day period, if established through discovery, would constitute a standalone violation of Section 1681i(a)(2) separate from and in addition to the reinvestigation failure.

29.     15 U.S.C. § 1681i(a)(6)(A) required Experian to provide written notice to Plaintiff of the results of any reinvestigation "not later than 5 business days after the completion of the reinvestigation." That notice was required to include: a statement that the reinvestigation was complete; a determination of whether the disputed information was accurate, inaccurate, incomplete, or could not be verified; notice of Plaintiff's right to add a statement of dispute; notice of Plaintiff's right to request notification of prior recipients; and a description of the procedure used to determine accuracy. 15 U.S.C. § 1681i(a)(6)(B). Experian provided none of these required communications following Plaintiff's October 2025 dispute. The statute conditions the notice obligation on "completion of the reinvestigation" — meaning notice of results is both a mandatory obligation triggered by completion and the mechanism by which a consumer receives confirmation that a completed reinvestigation occurred. The total absence of any Section 1681i(a)(6) notice is consistent with the inference that no reinvestigation was completed within the statutory period, and that no determination — including a determination that the disputed information was verified — was ever made.

30.     Under 15 U.S.C. § 1681i(a)(5)(A), where information cannot be verified within the applicable reinvestigation period, Experian was required to promptly delete that information from Plaintiff's credit file. Experian's failure to respond within the 30-day statutory period triggered that deletion obligation on or about December 1, 2025. Plaintiff's damages arising from Experian's continued reporting after that date — including the January 2026 Allegiant denial and every day of credit suppression through the June 4, 2026 deletion — represent a distinct and continuing violation of Section 1681i(a)(5)(A) independent of and in addition to the underlying reinvestigation failure.

31.     Plaintiff's certified mail to Concord was addressed to 500 N. Juniper Drive, Suite 100, Chandler, Arizona 85226 — the address Concord itself was reporting on Plaintiff's Experian credit file. USPS records confirm the mail was forwarded from that vacated address and delivered at Concord's current address of 4343 N. Scottsdale Road, Suite 270, Scottsdale, Arizona 85251, where it was signed for at the front desk on October 28, 2025 at 11:29 AM, as confirmed by USPS tracking number 9414711105495856154662.

32.     Despite confirmed delivery and signature, Concord provided no response of any kind — no acknowledgment, no reinvestigation result, no correction of the false information, and no response to any of Plaintiff's specific demands.

**Round 2 — February 2026:**

33.     On February 24, 2026, Plaintiff sent a formal demand for removal to Experian via certified mail, tracking number 9414711105495871548071, attaching Horry County public records proving no foreclosure was ever filed.

34.     Experian miscategorized this demand as an identity theft matter — avoiding the substance of the demand and resetting the statutory timeline — and subsequently

recategorized it as a standard dispute, constituting a second timeline reset within the same round. Neither Experian nor Concord addressed Plaintiff's specific demands.

35.     During this round, Concord changed the reported foreclosure start date from July 2025 to September 2025 while simultaneously certifying to Experian via the ACDV process that the information was accurate.

36.     Beginning with this round, Plaintiff attached Horry County, South Carolina public records to every submission proving no foreclosure was ever filed. Both Experian and Concord had independent statutory duties to investigate those records in response to Plaintiff's demands.

### Round 3 — March 2026:

37.     On March 4, 2026, Plaintiff sent a second formal demand for removal to Experian via certified mail, again attaching Horry County public records.

38.     Experian again miscategorized this demand as a standard dispute and conducted a reinvestigation without independent verification — accepting Concord's certification of accuracy without question despite having twice received Horry County public records. Neither Experian nor Concord addressed any of Plaintiff's specific demands.

39.     Whether Experian forwarded Plaintiff's Horry County public records to Concord via the ACDV process during this round is not known to Plaintiff and is among the information sought through Plaintiff's two Section 1681g complete file disclosure requests, both of which Experian has failed to answer.

40.     During Round 3, Concord changed the reported foreclosure start date a second time — from September 2025 to February 2026 — while simultaneously certifying to Experian via the ACDV process that the information was accurate. The April 2, 2026 Experian dispute response reflects "Foreclosure proceedings started" with a February 2026 updated date.

41.     Three different foreclosure start dates — July 2025, September 2025, and February 2026 — were reported by Concord for a foreclosure that Horry County public records confirm never existed.

### Round 4 — April 2026:

42.     On April 8, 2026, six days after receiving Experian's April 2 dispute response showing continued false reporting with the newly changed February 2026 start date, Plaintiff sent a fourth formal demand for removal to Experian via certified mail, fax, and electronic submission, attaching Horry County public records and simultaneously filing a CFPB complaint.

43.     Experian again miscategorized this formal removal demand as a standard dispute and conducted a fourth reinvestigation without independent verification. Neither Experian nor Concord addressed any of Plaintiff's specific demands across this round.

44.     On April 16, 2026, Concord updated the tradeline to reflect correct late payment status only. The false foreclosure notation was removed from the account status field and the payment history grid was corrected from the foreclosure status code to the standard delinquency notation. Subsequent Experian responses on April 16 and April 22, 2026

reflected the corrected late payment status without the foreclosure notation. The tradeline itself remained on Plaintiff's Experian credit report at this stage.

45.    The statutory violations arising from each of the four dispute rounds described above were complete at the time of each round. Each round triggered a fresh, independent statutory duty with its own 30-day clock. Concord's eventual partial correction in April 2026 does not cure or waive the violations that occurred in each prior round, each of which stands as an independently completed violation of the applicable statute.

**E. Experian's Contradictory Removal Statement**

46.    In late April through May 2026, Experian removed the false foreclosure notation from Plaintiff's credit report while simultaneously stating in writing that nothing was changed by the dispute. These two statements cannot both be true: if the dispute resulted in removal of the false notation, something was changed by the dispute. Plaintiff alleges that Experian's simultaneous removal and denial of any change constitutes a violation of 15 U.S.C. § 1681i(a)(6), which requires Experian to provide accurate written notice of the results of any reinvestigation.

47.    The tradeline was deleted from Plaintiff's Experian credit report on June 4, 2026. Upon deletion, Plaintiff's Experian credit score immediately increased to 790.

**F. Section 1681g Violations**

48.    On May 27, 2026, Plaintiff transmitted a complete file disclosure request pursuant to 15 U.S.C. § 1681g to Experian via facsimile at 972-390-4925 at 11:55 AM, as confirmed by facsimile transmission record. The 15-day statutory response deadline expired on June 11, 2026 without response of any kind from Experian.

49.    On June 16, 2026, Plaintiff transmitted a second Section 1681g complete file disclosure request to the same facsimile number, explicitly referencing the prior unanswered request. As of the date of this Complaint, Experian has not responded to either request.

50.    The complete file disclosure — including e-OSCAR records and ACDV transmissions from all dispute rounds — would establish the full chain of communications between Experian, Concord, and Capital Vacations during each reinvestigation, including whether Plaintiff's Horry County documentation was forwarded as required by statute.

**G. Capital Vacations, CRG, and GTCR: Directing Principal, Financing Entity, and Ratifying Owner**

51.    On April 27, 2026, Gloria Torres, Compliance Manager for Concord Servicing LLC, responded to Plaintiff's CFPB complaint in writing, confirming that Concord is acting solely as servicer for Capital Vacations and that Capital Vacations was contacted and provided documents in connection with Plaintiff's account during the dispute period. This written admission supports the allegation that Capital Vacations is the directing principal of the credit reporting activities at issue. A true and correct copy of this written response is attached hereto as Exhibit B.

52.    Capital Vacations never provided documentation establishing the legal basis for reporting foreclosure proceedings on a points-based right-to-use membership, nor any

documentation identifying a legal mechanism under which foreclosure proceedings could have commenced on such an instrument. Capital Vacations never responded to Plaintiff's demands for validation of authorization to report or explanation of the verification methodology. Capital Vacations, as account owner and directing principal, had direct authority to instruct Concord to correct or delete the false notation at any point during the ten-month reporting period and did not do so.

53.     CRG Development LLC, as the original note holder identified in Plaintiff's promissory note, originated the consumer installment loan through which Capital Vacations structured this transaction. CRG is the financing entity through which the underlying account was created and through which the account information entered the credit reporting chain. As the note holder on a points-based right-to-use contractual license carrying no real property interest, CRG was in a position to know from the inception of this account that reporting "Foreclosure proceedings started" on this instrument was not supportable under any applicable law.

54.     GTCR LLC acquired Concord Servicing LLC on or about July 31, 2023. Every violation described herein occurred after that acquisition date and during GTCR's ownership of Concord. Jeffrey Wright, GTCR's Chief Legal Officer, received and opened Plaintiff's written correspondence and was copied on all material correspondence between Plaintiff and Concord's General Counsel during the settlement discussion period, establishing actual knowledge of the false reporting at the ownership level.

55.     On June 10, 2026, Sonja Yurkiw, General Counsel of Concord Servicing LLC, acknowledged in written correspondence copied to Jeffrey Wright that there was "a noted error in the reporting," that "the reporting logic" was "incorrect," and that Plaintiff's account "had been reported with incorrect information." Those are the words of Concord's own General Counsel. A true and correct copy of this correspondence is attached hereto as Exhibit A. GTCR, as Concord's owner with actual knowledge of the false reporting at the Chief Legal Officer level and with full corporate authority to direct Concord to correct or delete the false notation, ratified Concord's continued false reporting by failing to take corrective action throughout the violation period. Ms. Yurkiw simultaneously claimed the error had been corrected approximately six months prior — a claim directly contradicted by the April 2, 2026 Experian dispute response showing the false foreclosure notation with a February 2026 updated date, received just ten weeks before her correspondence.

## H. Actual Damages

56.     Beginning no later than the date the false foreclosure notation first appeared on Plaintiff's Experian credit report, and continuing through the tradeline's deletion on June 4, 2026, Concord and Experian furnished and maintained false information on Plaintiff's credit report in violation of 15 U.S.C. §§ 1681s-2 and 1681e(b) respectively. The false notation suppressed Plaintiff's Experian credit score into the high 600s to low 700s — a differential of approximately 70 to 100 points from the scores maintained by TransUnion and Equifax, on which no information from this account appeared in any form.

57.     In September 2024, Plaintiff applied for a Home Equity Line of Credit with Bank of America. Bank of America denied the application, citing information in Plaintiff's Experian credit report.

58.     In October 2024, Plaintiff applied for a Home Equity Line of Credit with Discover Home Loans. Discover Home Loans denied the application, citing information in Plaintiff's Experian credit report.

59.     In or around January 2026, during the active dispute period and after Experian had failed to respond to Plaintiff's October 2025 certified mail dispute for over three months, Plaintiff applied for an Allegiant credit card. The application was denied, citing information in Plaintiff's Experian credit report.

60.     At the time of all three adverse credit actions, this account never appeared on TransUnion or Equifax in any form. Both scores remained in the vicinity of 800 throughout the relevant period. Bank of America and Discover Home Loans specifically cited Plaintiff's Experian report in their adverse action letters. The account appeared exclusively on Experian, where it carried both the delinquency and the false foreclosure notation as part of the same tradeline.

61.     Upon deletion of the Concord tradeline from Plaintiff's Experian credit report on June 4, 2026, Plaintiff's Experian score immediately increased to 790.

62.     Plaintiff has suffered additional actual damages including emotional distress, anxiety, and lost opportunity costs as a disabled veteran whose VA home purchase timeline — targeted for December 2026 through February 2027 — has been materially affected by Defendants' documented misconduct. The false foreclosure notation appeared prominently in the notes field of Plaintiff's Experian report where it was visible to reviewing lenders.

63.     During the ten-month period the false foreclosure notation appeared on Plaintiff's Experian report, Plaintiff was effectively prevented from shopping for credit with any lender that would pull Experian, because any such application would have presented the challenged foreclosure-related reporting. This suppression of Plaintiff's ability to apply for credit constitutes a distinct and concrete theory of actual damages beyond the three documented adverse actions, reflecting a lost opportunity cost that a borrower with accurate reporting would not have faced.

64.     Across four dispute rounds spanning approximately six months, Plaintiff consistently disputed a single factual issue: whether foreclosure proceedings had commenced on this account. Plaintiff's factual position never changed. What changed was Defendants' reporting. During those rounds, Concord transmitted three different foreclosure commencement dates, continued to certify the reporting as accurate, and Concord's General Counsel later acknowledged a noted error in the reporting and that the account had been reported with incorrect information. The tradeline was then deleted in its entirety. Plaintiff alleges that this sequence — changing dates, continued certifications of accuracy, written admission of error, and ultimate deletion — reflects a pattern of repeated certification of false information despite repeated documented notice of its falsity.

## V. CLAIMS FOR RELIEF

### COUNT I — EXPERIAN — VIOLATION OF 15 U.S.C. § 1681i

*(Failure to Conduct Reasonable Reinvestigation and Failure to Delete Unverified Information)*

65.     Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

66.    Experian violated Section 1681i(a)(1) by failing to complete its reinvestigation within 30 days after receiving Plaintiff's October 2025 certified mail dispute, delivered November 1, 2025 per USPS tracking number 9414711105495856125990. No response of any kind was provided and the statutory deadline definitively passed.

67.    Experian violated Section 1681i(a)(5)(A) by failing to promptly delete information that could not be verified within the applicable reinvestigation period. Upon expiration of the 30-day statutory period on or about December 1, 2025 without any reinvestigation result, Experian was required under Section 1681i(a)(5)(A) to delete the disputed tradeline from Plaintiff's credit file. Experian's continued reporting of the tradeline after that date — through June 4, 2026 — constitutes a distinct and continuing violation of that obligation, during which period Plaintiff suffered the January 2026 Allegiant denial and ongoing credit suppression.

68.    Experian violated Section 1681i(a)(2) by failing, upon information and belief, to forward all relevant information regarding Plaintiff's October 2025 dispute — including Plaintiff's documentary demands — to Concord within the five-business-day period mandated by 15 U.S.C. § 1681i(a)(2)(A). The statute requires that this notice "include all relevant information regarding the dispute that the agency has received from the consumer." Whether Experian fulfilled this obligation is not independently verifiable by Plaintiff without the complete file disclosure that Experian has failed to produce under Section 1681g. This allegation is pleaded upon information and belief pending production of the e-OSCAR and ACDV records sought through Plaintiff's Section 1681g requests.

69.    Experian violated Section 1681i(a)(6) by failing to provide Plaintiff with written notice of the results of any reinvestigation of the October 2025 dispute within five business days of completion as required by 15 U.S.C. § 1681i(a)(6)(A). The statute required that notice to include: a statement that the reinvestigation was complete; a determination of whether the disputed information was found to be accurate, inaccurate, incomplete, or unverifiable; notice of Plaintiff's right to add a statement of dispute to his file; notice of Plaintiff's right to request notification of prior recipients of his consumer report; and a description of the procedure used to determine the accuracy of the disputed information. 15 U.S.C. § 1681i(a)(6)(B). Experian provided none of these required communications. Because the statute conditions the notice obligation on "completion of the reinvestigation," the complete absence of any Section 1681i(a)(6) notice is consistent with the inference that no reinvestigation was completed within the statutory period and that no determination — including a determination that the disputed information was verified — was reached. A CRA that completes a reinvestigation is required by statute to say so in writing; Experian did not. Section 1681i(a)(5)(A) requires deletion where, after a reinvestigation, information "cannot be verified." Where the absence of any Section 1681i(a)(6) notice supports the inference that no reinvestigation was completed and no verification was made, that same absence is consistent with the further inference that the statutory predicate for deletion under Section 1681i(a)(5)(A) — information that has not been verified within the reinvestigation period — was present. Plaintiff does not allege that the absence of a Section 1681i(a)(6) notice is conclusive proof that verification did not occur; Plaintiff alleges that the statutory framework, read as a whole, creates a sequence in which completion of a reinvestigation triggers a mandatory notice obligation, and the total absence of that notice is consistent with the allegation that the reinvestigation was not completed, the information

was not verified, and the deletion obligation under Section 1681i(a)(5)(A) was therefore implicated.

70.    Experian violated Section 1681i by miscategorizing Plaintiff's February 2026 removal demand as an identity theft matter, resetting the statutory timeline, and subsequently recategorizing it as a standard dispute, constituting a second timeline reset within the same round.

71.    Experian violated Section 1681i by conducting reinvestigations in Rounds 3 and 4 without independent verification despite receiving Horry County public records proving the falsity of the notation in each round. See Cushman v. Trans Union Corp., 115 F.3d 220 (3d Cir. 1997).

## COUNT II — EXPERIAN — VIOLATION OF 15 U.S.C. § 1681i(a)(6)

*(Contradictory Removal Statement)*

72.    Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

73.    Experian violated Section 1681i(a)(6) by simultaneously removing the false foreclosure notation — including the foreclosure status code from the payment history grid — and stating in writing that nothing was changed by the dispute.

## COUNT III — EXPERIAN — VIOLATION OF 15 U.S.C. § 1681e(b)

*(Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy)*

74.    Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

75.    Experian violated Section 1681e(b) by: (a) continuing to report false information after receiving documentary proof of its falsity across multiple dispute rounds; (b) failing to forward Plaintiff's Horry County public records to Concord via the ACDV process, a fact that cannot be confirmed without the complete file disclosure Experian has twice refused to produce; (c) uncritically accepting Concord's certifications of accuracy without independent verification; and (d) reporting the incorrect furnisher address throughout the relevant period.

## COUNT IV — EXPERIAN — VIOLATION OF 15 U.S.C. § 1681g

*(Failure to Provide Complete File Disclosure)*

76.    Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

77.    Experian violated Section 1681g by failing to provide Plaintiff's complete file disclosure within the statutory period following Plaintiff's May 27, 2026 facsimile request to 972-390-4925 at 11:55 AM. The 15-day statutory deadline expired June 11, 2026 without response. Experian committed a second violation of Section 1681g by failing to respond to Plaintiff's June 16, 2026 renewal request within the statutory period. As of the date of this Complaint, Experian has not responded to either request.

## COUNT V — CONCORD AND GTCR — VIOLATION OF 15 U.S.C. § 1681s-2(b)

*(Failure to Conduct Reasonable Investigation After Dispute Notice)*

78.    Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

79.    Upon receiving notice of Plaintiff's disputes from Experian across four dispute rounds, Concord was required under Section 1681s-2(b) to conduct a reasonable investigation, review all relevant information provided by Experian including consumer-submitted documentation, report the results to Experian, and correct or delete inaccurate information.

80.    Concord failed to conduct a reasonable investigation in each of four separate dispute rounds — October 2025, February 2026, March 2026, and April 2026 — constituting four separate violations of Section 1681s-2(b). Each dispute round triggered a fresh, independent statutory duty with its own 30-day clock.

81.    In each round, Concord responded by transmitting ACDV certifications to Experian maintaining the false foreclosure notation as accurate, without addressing Plaintiff's demands for validation of authorization to report, identification of who conducted any verification, or explanation of verification methodology.

82.    Concord's transmission of three different foreclosure start dates — July 2025, September 2025, and February 2026 — during active dispute periods while simultaneously certifying accuracy to Experian demonstrates that Concord did not conduct any meaningful investigation across any dispute round. Each date change required an affirmative decision to transmit a new certification of accuracy for a foreclosure that Horry County public records confirm never existed.

83.    Concord's continued certification of the false foreclosure notation as accurate after receiving Horry County public records confirming no foreclosure was ever filed is consistent with, and supports a plausible inference of, willful disregard of its statutory obligations under Section 1681s-2(b).

84.    These facts support a plausible inference of willful noncompliance by Concord: (1) the reporting of a foreclosure event on an account type that Plaintiff alleges did not support the reported foreclosure proceedings, confirmed false by Horry County public records; (2) the transmission of three successive false foreclosure start dates during active dispute periods while certifying accuracy; (3) the continued certification of false information after receiving Horry County public records proving no foreclosure was ever filed; and (4) the written acknowledgment by Concord's own General Counsel that the reporting was incorrect, which reflects corporate knowledge of the violation at the highest level.

85.    This is not a case of a single inaccurate report. It is a case of Defendants' repeated certification of the same false legal event after receiving documentary proof that the event never occurred.

86.    GTCR LLC, as Concord's owner during the entire violation period, with actual knowledge of the false reporting established at the Chief Legal Officer level, and with full corporate authority to direct Concord to correct or delete the false notation, ratified Concord's continued false reporting by failing to take any corrective action. GTCR's ratification and active ownership of the reporting enterprise during the entire period of noncompliance supports its inclusion in the claims described in this Count.

## COUNT VI — CAPITAL VACATIONS LLC AND CRG DEVELOPMENT LLC — VIOLATION OF 15 U.S.C. § 1681s-2

*(Account Owner, Directing Principal, and Note Holder Liability — Complete Relief and Prevention of Future Reporting)*

87.    Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

88.    Capital Vacations, as the directing principal and account owner, is alleged to have originated the false foreclosure characterization and directed its continuation across four documented dispute rounds. Gloria Torres' written admission of April 27, 2026 confirms that Capital Vacations is the account owner, that Concord acts solely as servicer for Capital Vacations, and that Capital Vacations was contacted and provided documents in connection with Plaintiff's account during the dispute period. Capital Vacations, as directing principal, is alleged to be the entity that caused the false foreclosure characterization to be introduced and maintained in the credit reporting system.

89.    Capital Vacations, as account owner, had direct authority to instruct Concord to correct or delete the false notation at any point during the ten-month reporting period and did not do so. Capital Vacations never provided documentation establishing the legal basis for reporting foreclosure proceedings on a points-based right-to-use membership.

90.    The three successive false foreclosure start dates — July 2025, September 2025, and February 2026 — transmitted by Concord during active dispute periods were transmitted in the course of Concord's role as servicer acting at the direction of Capital Vacations, as confirmed by Gloria Torres' written admission. Each date change while certifying accuracy to Experian was an affirmative act taken within the Capital Vacations / Concord reporting relationship.

91.    Capital Vacations and CRG are pleaded jointly in this Count because they constitute the integrated account ownership and financing structure from which the false reporting originated and through which future reporting could recur. Capital Vacations is the account owner and directing principal. CRG is the note holder on the underlying promissory note and retains a legal interest in the account independent of Capital Vacations' ownership role. Because the promissory note identifying CRG as note holder remains the operative instrument — and because any successor servicer acting on behalf of either entity could potentially report this account in the future under CRG's note holder interest rather than under Capital Vacations' owner interest — complete relief requires that both entities be bound by any injunctive relief entered by this Court. A judgment or settlement releasing only Capital Vacations would not prevent a successor servicer or assignee from reporting this account under the CRG note holder chain. Both Capital Vacations and CRG share the same address and the same counsel, and both entities received correspondence from Plaintiff regarding this matter through that counsel. The inclusion of both defendants in this Count is necessary to ensure that any permanent injunction against future reporting of this account is binding on all entities within the Capital Vacations / CRG account ownership and financing structure, and on any successor servicer, assignee, or affiliated entity acting through either chain.

## COUNT VII — VIOLATION OF PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW AND PENNSYLVANIA FAIR CREDIT EXTENSION UNIFORMITY ACT

(73 P.S. § 201-9.2 and Pennsylvania Fair Credit Extension Uniformity Act — Treble Damages)

92.     Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

93.     Plaintiff Eric Shawn Godfrey is a Pennsylvania resident who purchased a vacation ownership membership for personal use and suffered the adverse credit actions described herein while residing in Lancaster, Pennsylvania. Plaintiff is a consumer within the meaning of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-9.2 ("UTPCPL"), and the Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA").

94.     Plaintiff does not assert this Count with respect to the act of furnishing information to a consumer reporting agency or with respect to the underlying account, the payment history, or the delinquency — all of which Plaintiff acknowledges and does not dispute. This Count is asserted solely with respect to the affirmative pattern of deceptive conduct described herein, which Plaintiff alleges constitutes an unfair and deceptive business practice independent of and beyond the act of furnishing regulated by 15 U.S.C. § 1681s-2.

95.     Defendants engaged in a pattern of conduct with the capacity to deceive a Pennsylvania consumer within the meaning of the UTPCPL catchall provision, 73 P.S. § 201-2(4)(xxi), as interpreted by the Pennsylvania Supreme Court in *Gregg v. Ameriprise Financial, Inc.*, 245 A.3d 637 (Pa. 2021). Specifically: (a) Defendants transmitted three successive false foreclosure commencement dates — July 2025, September 2025, and February 2026 — each accompanied by a simultaneous certification of accuracy, during a period of active certified mail disputes in which Plaintiff had provided exculpatory Horry County public records; (b) Defendants continued to certify the false reporting as accurate after receiving documentary proof of its falsity across four dispute rounds; and (c) Concord's General Counsel acknowledged in writing that the reporting logic was incorrect and that the account had been reported with incorrect information. Each of these acts, individually and in combination, constitute conduct with the capacity to deceive and to create misunderstanding, directed at a Pennsylvania consumer, within the meaning of the UTPCPL catchall provision.

96.     The affirmative act of transmitting a new false foreclosure date while simultaneously certifying accuracy — repeated three times during active dispute periods — is not merely the act of furnishing information to a consumer reporting agency. It is an affirmative representation of fact directed to Experian and, through Experian's credit reporting, to every lender who reviewed Plaintiff's credit report during the relevant period. Plaintiff alleges that this conduct extends beyond the subject matter regulated under 15 U.S.C. § 1681s-2 and constitutes an independent deceptive act or practice within the meaning of the UTPCPL and the FCEUA.

97.     Defendants' conduct caused concrete financial harm in the form of three adverse credit actions and material impairment of Plaintiff's ability to obtain home equity financing while residing in the Commonwealth of Pennsylvania.

98.     The FCEUA prohibits deceptive acts or practices in connection with consumer credit and incorporates the remedies available under the UTPCPL. The pattern of conduct described herein — including the sequential transmission of false foreclosure dates while certifying accuracy and the continued certification of false information after receiving exculpatory public records — constitutes deceptive conduct within the meaning of the FCEUA.

99. Plaintiff acknowledges that Defendants may assert preemption under 15 U.S.C. § 1681t(b)(1)(F) with respect to furnisher conduct. The conduct alleged in this Count is asserted as an independent pattern of affirmative deception — the sequential introduction of changing false dates while certifying accuracy, combined with a written General Counsel admission of incorrect reporting — that Plaintiff alleges extends beyond the subject matter of furnisher responsibilities regulated by Section 1681s-2 and constitutes an independent unfair and deceptive trade practice under Pennsylvania law. To the extent any portion of this Count is found preempted, the remaining portions and all other Counts are expressly preserved.

100. As a result of Defendants' violations of Pennsylvania law, Plaintiff is entitled to actual damages, treble damages up to three times actual damages pursuant to 73 P.S. § 201-9.2, and reasonable attorney fees and costs.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Eric Shawn Godfrey respectfully requests that this Court:

A. Award Plaintiff actual damages in an amount to be determined at trial, including damages for three documented adverse credit actions citing Experian specifically; suppression of Plaintiff's credit score causing an approximately 70-100 point differential from Plaintiff's scores on TransUnion and Equifax; emotional distress as a disabled veteran whose VA home purchase timeline has been materially affected; and lost opportunity costs associated with Defendants' documented misconduct;

B. Award Plaintiff statutory damages of not less than $100 and not more than $1,000 per violation per defendant pursuant to 15 U.S.C. § 1681n(a)(1)(A), with each distinct breach of a separate statutory duty constituting a separate violation;

C. Award Plaintiff punitive damages pursuant to 15 U.S.C. § 1681n(a)(2) based on Defendants' willful noncompliance, which is supported by the following facts from which willfulness may be inferred: (1) reporting a foreclosure event on an account type that Plaintiff alleges did not support the reported foreclosure proceedings, confirmed false by Horry County public records; (2) transmitting three successive false foreclosure start dates during active dispute periods while certifying accuracy; (3) continuing to report false information after receiving exculpatory Horry County public records; and (4) Concord's General Counsel acknowledging in writing that the reporting was incorrect. Plaintiff seeks the maximum punitive damages the evidence and applicable law will support;

D. Award Plaintiff the costs of this action together with reasonable attorney's fees pursuant to 15 U.S.C. § 1681n(a)(3) and 15 U.S.C. § 1681o(a)(2);

E. Enter a permanent injunction prohibiting Defendants Concord Servicing LLC, GTCR LLC, Capital Vacations LLC, CRG Development LLC, and any successor servicer, assignee, or affiliated entity from reporting this account to any consumer reporting agency in the future, binding on all successors and assigns;

F. Award Plaintiff treble damages pursuant to 73 P.S. § 201-9.2 of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, based on Defendants' affirmatively deceptive conduct as described in Count VII; and

G. Grant such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

99.     Plaintiff hereby demands a trial by jury on all issues so triable pursuant to Federal Rule              of              Civil              Procedure              38(b).

Respectfully submitted,

_____

Eric Shawn Godfrey

Pro Se Plaintiff

1705 Wilson Ave

Lancaster, Pennsylvania 17603

717-330-0515

egodfrey@gmail.com

Date: _____July 1st, 2026_____

## EXHIBITS

Exhibit A — June 10, 2026 Email from Sonja Yurkiw, General Counsel, Concord Servicing LLC (copied to Jeffrey Wright, Chief Legal Officer, GTCR LLC)

Exhibit B — April 27, 2026 Written Response of Gloria Torres, Compliance Manager, Concord Servicing LLC, to CFPB Complaint No. 260423-31761106

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

Eric Shawn Godfrey v. Experian Information Solutions, Inc., et al.

Civil Action No. _____

**EXHIBIT**



**A**

**DESCRIPTION OF EXHIBIT**

Email Correspondence from Sonja Yurkiw,

Chief Legal Officer, Concord Servicing LLC,

to Eric Shawn Godfrey and Jeffrey Wright, dated June 10, 2026

**CASE REFERENCE**

Plaintiff: Eric Shawn Godfrey

Defendants: Experian Information Solutions, Inc., et al.

Filed: United States District Court, Eastern District of Pennsylvania

Admitted or Offered: In Support of Complaint and Demand for Jury Trial

*This cover sheet is submitted with the Complaint filed by Plaintiff Eric Shawn Godfrey, Pro Se*



**Sonja Yurkiw**                                                      Wed, Jun 10, 12:11 PM

to me, Jeffrey

Greetings Mr. Godfrey,

Thank you for confirming the tradeline is no longer appearing on your credit report.  To address your additional concerns, there was a noted error in the reporting that was indeed corrected some 6 months ago.  Meaning, we corrected the reporting logic itself.  I recognize that does not change the fact that, in your case, the account had been reported with incorrect information, which is how we came to the resolution of complete tradeline deletion, despite past delinquencies.

I hope this helps.

Best,

Sonja

**Sonja Yurkiw**

Chief Legal Officer

480-214-8778

concordfinance.com



Ⓒ CONCORD

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

Eric Shawn Godfrey v. Experian Information Solutions, Inc., et al.

Civil Action No. _____

# EXHIBIT

# B

## DESCRIPTION OF EXHIBIT

Written Response of Gloria Torres, Compliance Manager,

Concord Servicing LLC, to CFPB Complaint No. 260423-31761106,

dated April 27, 2026

## CASE REFERENCE

Plaintiff: Eric Shawn Godfrey

Defendants: Experian Information Solutions, Inc., et al.

Filed: United States District Court, Eastern District of Pennsylvania

Admitted or Offered: In Support of Complaint and Demand for Jury Trial

*This cover sheet is submitted with the Complaint filed by Plaintiff Eric Shawn Godfrey, Pro Se*

 CONCORD

🌐 concordservicing.com

📞 (480) 998-7585

📍 4343 N. Scottsdale Rd. STE #270
Scottsdale, AZ. 85251

April 27, 2026

**VIA CFPB Consumer Complaint Web Portal**
Consumer Financial Protection Bureau

RE:     Complaint No.:          260423-31761106
        Complainant:            Eric Godfrey
        Our Account No.:        646190087710

Concord Servicing LLC ("Concord") is in receipt of the Complaint filed with your office by Eric Godfrey. Please consider this Concord's formal response.

Concord Servicing LLC ("Concord") is an independent third-party loan servicing and technology company, providing services to numerous clients.  Concord has no ownership, financial or other economic interest in the business or assets of our clients. Concord's sole involvement with your loan obligation is as the servicer.

After reviewing the Complaint, Eric Godfrey alleges that is filing this complaint due to Experian's repeated failure to conduct a reasonable investigation and its continued reporting of inaccurate and unverifiable information furnished by Concord Servicing LLC. This issue is currently preventing me from obtaining a mortgage and is causing ongoing financial harm. **Details:** I have made multiple written requests to Experian demanding verification and documentation regarding a tradeline reported by Concord Servicing LLC. These requests were not routine disputes—they were formal demands for proof of accuracy, ownership, and authority to report. Despite this, Experian repeatedly treated my requests as standard disputes and responded by stating that the furnisher "verified" the account, without providing any documentation or meaningful explanation.
Critically, Experian previously verified a foreclosure-related status associated with this account. That foreclosure has since been removed from my credit report without explanation. This demonstrates that Experian reported and verified materially inaccurate information.
Experian has failed to provide:
* The method of verification used
* The identity of the party who verified the information
* Any documentation supporting the accuracy of the account
* Proof that Concord Servicing LLC has the legal authority to report this account
Additionally, the reported balance has increased from approximately $12,771 to over $24,000. No explanation, itemization, or contractual basis for these charges has ever been provided. I have also directly requested documentation from Concord Servicing LLC, including chain of assignment (Capital Vacations → Equiant → Concord), proof of





🌐 concordservicing.com

📞 (480) 998-7585

📍 4343 N. Scottdale Rd. STE #270
Scottsdale, AZ. 85251

---

ownership or servicing authority, and a complete accounting of the balance. No substantive documentation has been provided.

Response

As mentioned above Concord is a third-party loan servicing company. Our sole involvement with your loan obligation is as the servicer. We did reach out to Capital Vacations and they have provided the attached validation of debt, a copy of promissory note and copy of purchase agreement to validate the debt.

Based on the above information, I trust this matter is resolved as to Concord. If there are any questions regarding this matter, please contact me at your convenience.

Sincerely,

Gloria Torres
Compliance Manager





🌐 concordservicing.com

📞 (480) 998-7585

📍 4343 N. Scottdale Rd. STE #270
Scottsdale, AZ. 85251

April 27, 2026

**VIA CFPB Consumer Complaint Web Portal**
Consumer Financial Protection Bureau

RE:    Complaint No.:          260423-31761106
       Complainant:            Eric Godfrey
       Our Account No.:        646190087710

Concord Servicing LLC ("Concord") is in receipt of the Complaint filed with your office by Eric Godfrey. Please consider this Concord's formal response.

Concord Servicing LLC ("Concord") is an independent third-party loan servicing and technology company, providing services to numerous clients.  Concord has no ownership, financial or other economic interest in the business or assets of our clients. Concord's sole involvement with your loan obligation is as the servicer.

After reviewing the Complaint, Eric Godfrey alleges that is filing this complaint due to Experian's repeated failure to conduct a reasonable investigation and its continued reporting of inaccurate and unverifiable information furnished by Concord Servicing LLC. This issue is currently preventing me from obtaining a mortgage and is causing ongoing financial harm. **Details:** I have made multiple written requests to Experian demanding verification and documentation regarding a tradeline reported by Concord Servicing LLC. These requests were not routine disputes—they were formal demands for proof of accuracy, ownership, and authority to report. Despite this, Experian repeatedly treated my requests as standard disputes and responded by stating that the furnisher "verified" the account, without providing any documentation or meaningful explanation.
Critically, Experian previously verified a foreclosure-related status associated with this account. That foreclosure has since been removed from my credit report without explanation. This demonstrates that Experian reported and verified materially inaccurate information.
Experian has failed to provide:
* The method of verification used
* The identity of the party who verified the information
* Any documentation supporting the accuracy of the account
* Proof that Concord Servicing LLC has the legal authority to report this account
Additionally, the reported balance has increased from approximately $12,771 to over $24,000. No explanation, itemization, or contractual basis for these charges has ever been provided. I have also directly requested documentation from Concord Servicing LLC, including chain of assignment (Capital Vacations → Equiant → Concord), proof of





concordservicing.com

(480) 998-7585

4343 N. Scottsdale Rd. STE #270
Scottsdale, AZ. 85251

ownership or servicing authority, and a complete accounting of the balance. No substantive documentation has been provided.

Response

As mentioned above Concord is a third-party loan servicing company. Our sole involvement with your loan obligation is as the servicer. We did reach out to Capital Vacations and they have provided the attached validation of debt, a copy of promissory note and copy of purchase agreement to validate the debt.

Based on the above information, I trust this matter is resolved as to Concord. If there are any questions regarding this matter, please contact me at your convenience.

Sincerely,

Gloria Torres
Compliance Manager



AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

| | |
|---|---|
| Eric Shawn Godfrey <br><br><br> *Plaintiff(s)* <br> v. <br> EXPERIAN INFORMATION SOLUTIONS, INC.; CONCORD SERVICING LLC; GTCR LLC; CAPITAL VACATIONS LLC; and CRG DEVELOPMENT LLC <br><br> *Defendant(s)* | ) ) ) ) ) ) ) ) ) ) ) ) ) )    Civil Action No. |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*     Capital Vacations LLC
2024 Corporate Centre Drive, Suite 101
Myrtle Beach, SC 29577

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:     Eric Shawn Godfrey, Pro Se
1705 Wilson Ave
Lancaster, PA 17603
717 330 0515
egodfrey@gmail.com

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date:     07/01/2026

_____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❒ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❒ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❒ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❒ I returned the summons unexecuted because _____ ; or

❒ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ __0.00__ .

I declare under penalty of perjury that this information is true.


Date: _____                    _____
                                                           *Server's signature*

                                                           _____
                                                           *Printed name and title*


                                                           _____
                                                           *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Pennsylvania

| | |
|---|---|
| Eric Shawn Godfrey <br><br><br><br> _Plaintiff(s)_ <br><br> v. <br><br> EXPERIAN INFORMATION SOLUTIONS, INC.; CONCORD SERVICING LLC; GTCR LLC; CAPITAL VACATIONS LLC; and CRG DEVELOPMENT LLC <br><br> _Defendant(s)_ | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )     Civil Action No. |

## SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_     Concord Servicing LLC,
4343 North Scottsdale Road, Suite 270
Scottsdale, AZ 85251

     A lawsuit has been filed against you.

     Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

     Eric Shawn Godfrey, Pro Se
1705 Wilson Ave
Lancaster, PA 17603
717 330 0515
egodfrey@gmail.com

     If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

_CLERK OF COURT_

Date:  _____07/01/2026_____    _____
                                                     _Signature of Clerk or Deputy Clerk_

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*

My fees are $ _____ for travel and $ _____ for services, for a total of $ ____0.00____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Eastern District of Pennsylvania

| | |
|---|---|
| Eric Shawn Godfrey <br><br> _____ <br> *Plaintiff(s)* <br><br> v. <br><br> EXPERIAN INFORMATION SOLUTIONS, INC.; CONCORD SERVICING LLC; GTCR LLC; CAPITAL VACATIONS LLC; and CRG DEVELOPMENT LLC <br><br> _____ <br> *Defendant(s)* | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )  Civil Action No. |

**SUMMONS IN A CIVIL ACTION**

To: *(Defendant's name and address)*
CRG Development LLC
c/o Capital Vacations LLC,
2024 Corporate Centre Drive, Suite 101
Myrtle Beach, SC 29577

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Eric Shawn Godfrey, Pro Se
1705 Wilson Ave
Lancaster, PA 17603
717 330 0515
egodfrey@gmail.com

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date:     07/01/2026     _____

_____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❐ I returned the summons unexecuted because _____ ; or

❐ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .

I declare under penalty of perjury that this information is true.

Date: _____        _____
                                                *Server's signature*

                                               _____
                                                *Printed name and title*

                                               _____
                                                *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Pennsylvania

| | |
|---|---|
| Eric Shawn Godfrey | ) |
| | ) |
| | ) |
| | ) |
| *Plaintiff(s)* | ) |
| v. | ) Civil Action No. |
| EXPERIAN INFORMATION SOLUTIONS, INC.; CONCORD SERVICING LLC; GTCR LLC; CAPITAL VACATIONS LLC; and CRG DEVELOPMENT LLC | ) |
| *Defendant(s)* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Experian Information Solutions, Inc.
475 Anton Boulevard
Costa Mesa, CA 92626

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:
Eric Shawn Godfrey, Pro Se
1705 Wilson Ave
Lancaster, PA 17603
717 330 0515
egodfrey@gmail.com

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____ 07/01/2026 _____          _____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❐ I returned the summons unexecuted because _____ ; or

❐ Other *(specify):*

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Pennsylvania

| | |
|---|---|
| Eric Shawn Godfrey | ) |
| | ) |
| | ) |
| | ) |
| _Plaintiff(s)_ | ) |
| | ) |
| v. | )    Civil Action No. |
| | ) |
| EXPERIAN INFORMATION SOLUTIONS, INC.; | ) |
| CONCORD SERVICING LLC; GTCR LLC; CAPITAL | ) |
| VACATIONS LLC; and CRG DEVELOPMENT LLC | ) |
| | ) |
| | ) |
| _Defendant(s)_ | ) |

### SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_    GTCR LLC
300 North LaSalle Street, Suite 5600
Chicago, IL 60654


A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:    Eric Shawn Godfrey, Pro Se
1705 Wilson Ave
Lancaster, PA 17603
717 330 0515
egodfrey@gmail.com


If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.


_CLERK OF COURT_


Date:      07/01/2026                                            

                                                              _Signature of Clerk or Deputy Clerk_

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❒ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❒ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❒ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❒ I returned the summons unexecuted because _____ ; or

❒ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ __0.00__ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc: